J-S64025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CARMAN DELTON HYDOCK | : | No. 566 WDA 2019 |

Appeal from the Order Entered March 20, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002216-2017

BEFORE:   BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 17, 2020**

The Commonwealth of Pennsylvania appeals from the trial court's order granting Defendant Carman Delton Hydock's pretrial motion to suppress and dismissing the charges filed against Hydock.[1]  We reverse.

On the evening of February 28, 2017, Officer Jason Myers of the City of Latrobe Police Department was on duty in a marked patrol car when he initiated a vehicle stop at the intersection of Lincoln Highway and Industrial Boulevard in the City of Latrobe.  Hydock was the driver of the stopped vehicle, a red Ford SUV.  Officer Myers testified at a suppression hearing that he stopped Hydock for a turn signal violation after he had followed the SUV for

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In its notice of appeal, the Commonwealth certifies that the trial court's order terminates or substantially handicaps the prosecution.  **See** Pa.R.A.P. 311(d). Thus, this appeal is properly before us.

approximately four to five minutes. N.T. Suppression, 6/1/18, at 25-26. As Hydock approached the intersection in the right lane, he proceeded to turn right onto Industrial Boulevard without stopping or using his right turn signal. *Id.* at 27-28. A stop sign at the intersection had a sign underneath it that read, "EXCEPT RIGHT TURN." *Id.* at 27. As a result of Hydock's failure to use his turn signal, Officer Myers activated his patrol car's overhead emergency light and conducted a traffic stop. *Id.* at 28. Ethan Guzikowski was in the passenger seat of the SUV.

Officer Myers approached Hydock's vehicle and asked him for his driver's license, registration and proof of insurance. *Id.* at 30. Hydock told Officer Myers that his license had been suspended and handed Officer Myers an expired Pennsylvania driver's license. *Id.* When Officer Myers ran the license through dispatch, he was advised that Hydock's license was current and valid. *Id.* at 31. Hydock told Officer Myers that he did not have a current, valid driver's license in his possession. *Id.* at 32. For safety purposes, Officer Myers then asked Hydock and his passenger to exit the vehicle; Hydock and Guzikowski complied. *Id.* Officer Myers asked Hydock if there was anything illegal in the vehicle, to which Hydock replied, "no." *Id.* at 32. Officer Myers then asked Hydock if he could search the car and Hydock gave the officer consent to search. *Id.* at 34. Officer Myers entered the car through the driver's side, searched the center console and underneath the driver's seat. *Id.* at 36. At that time, Officer Myers heard yelling as backup officers tried to detain Hydock and his passenger, neither of whom were handcuffed, outside

- 2 -

of the vehicle. *Id.* at 36-37. As Officer Myers walked toward the other officers, he observed a clear Ziploc baggie with suspected marijuana on the hood of Officer Myers' patrol vehicle. *Id.* at 37. By that point Hydock and his passenger were handcuffed. Hydock told Officer Myers that he owned the marijuana and intended to sell it. *Id.* at 39-40. Hydock was charged with possession of a controlled substance, possession with intent to deliver a controlled substance, and possession of drug paraphernalia.

On September 21, 2017, Hydock filed an omnibus pretrial motion to suppress all evidence recovered from Officer Myers' vehicle stop, claiming the officer lacked reasonable suspicion that Hydock had violated the Vehicle Code. On June 1, 2018, the trial court held a suppression hearing at which Hydock's arresting officers testified.[2] On March 19, 2019, the trial court granted Hydock's suppression motion, concluding that Hydock "was not required by the Motor Vehicle Code to signal a right turn at the intersection of Lincoln Avenue and Industrial Boulevard, and[,] thus[,] Officer Myers' stop of [Hydock] was not supported by probable cause and was unlawful." Trial Court Opinion, 3/19/18, at 2. The Commonwealth filed a timely notice of appeal.

_____

[2] We note that on June 4, 2018, Hydock filed a "[S]upplemental Omnibus Pretrial Motion" seeking dismissal of the charges based upon Pa.R.Crim.P. 600 and the Commonwealth's failure to comply with his speedy trial rights. On August 13, 2018, the court held a Rule 600 hearing where Hydock's arresting officers testified. For briefing, review and decision-making purposes, the trial court consolidated the issues raised in Hydock's omnibus pretrial motions. Having dismissed Hydock's charges based upon the court's determination that the stop was unlawful, the court dismissed "without further consideration" Hydock's remaining claims in his motions. *See* Trial Court Opinion, 3/19/18, at 2.

On appeal, the Commonwealth raises the following issue: "Whether, when a motorist makes a turn, from one street to another, past a stop sign qualified by 'Except Right Turn' and fails to signal, it was reasonable for Officer Myers to believe that that motorist had violated the Vehicle Code?" Commonwealth's Brief, at 6.

When reviewing the grant of a suppression motion, we must determine whether the record supports the suppression court's factual findings and "whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Brown*, 64 A.3d 1101, 1104 (Pa. Super. 2013). We may only consider evidence presented at the suppression hearing. *Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa. Super. 2014). Further, we may only consider the appellee's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the record as a whole, giving deference to the suppression court's factual determinations in its exclusive role as fact-finder. *Id.* We may reverse only if the legal conclusions drawn from the facts are in error. *Brown*, 64 A.3d at 1104.

The Commonwealth contends that it was objectively reasonable for Officer Myers to conduct the traffic stop of Hydock's vehicle where the officer believed that Hydock had violated section 3334 of the Vehicle Code. We agree.

> If the alleged basis of a vehicular stop is to determine whether there has been compliance with the Commonwealth's Vehicle Code, it is incumbent upon the officer to articulate specific facts

- 4 -

possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the code. However, if an officer stops a vehicle for the purpose of obtaining necessary information to enforce the provisions of the code, the stop need only be based on reasonable suspicion that a violation of the code has occurred. 75 Pa.C.S. § 6308(b).

***Commonwealth v. Slattery***, 139 A.3d 221, 222-23 (citation omitted).

Here, where Officer Myers stopped Hydock for failing to signal when he turned right from Lincoln Highway onto Industrial Boulevard, he was required to have probable cause to initiate the stop because further investigation would not have helped him establish whether Hydock used the required signal. ***See Brown***, 64 A.3d at 1105. "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Hernandez***, 935 A.2d 1275, 1984 (Pa. 2007) (quotation and citations omitted). "We evaluate probable cause by considering all relevant facts under a totality of the circumstances analysis." ***Id.***

Pursuant to section 3334:

§ 3334. Turning movements and required signals.

(a) General rule. — **Upon a roadway no person shall turn a vehicle** or move from one traffic lane to another or enter the traffic stream from a parked position **unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.**

(b) Signals on turning and starting. — At speeds of less than 35 miles per hour**, an appropriate signal of intention to turn right** or left **shall be given continuously during not less than**

**the last 100 feet traveled by the vehicle before turning**. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S. § 3334(a), (b) (emphases added).

Instantly, as Hydock was driving in the right lane heading north on Lincoln Avenue, he made a right turn at the intersection of Lincoln Avenue and Industrial Boulevard onto Industrial Boulevard. He did not use his turn signal. At the intersection is a stop sign with a sign underneath it that says, "Except Right Turn." Based on his belief that Hydock had violated section 3334 of the Vehicle Code, which requires a driver give "an appropriate signal of intention to turn right," Officer Myers initiated a traffic stop.

Here, the trial court noted that Hydock's "northerly course of travel on Lincoln Avenue curved continuously and unbroken in an easterly direction onto Industrial Boulevard." Trial Court Opinion, 3/19/18, at 3. Although the court recognized that Hydock was not required to stop as per the street sign, the court also stated that because no traffic traveling on Depot Street, the road running to the east and west[3] of the intersection, can legally enter the Lincoln Avenue/Industrial Boulevard roadway due to its one-way nature, Officer Myers

---

[3] The intersection of Lincoln Highway and Industrial Boulevard is known as a "T-intersection," where Lincoln Highway does not continue straight and drivers either turn right onto Industrial Boulevard (eastbound) or left onto Depot Street (westbound). Moreover, Depot Street westbound is one-way at the T-intersection of Lincoln Highway and Industrial Boulevard. Further, immediately after making a right turn onto Industrial Boulevard from Lincoln Highway is a continuation of Depot Street on the right, another one-way roadway (eastbound).

was incorrect in believing that Hydock was required to signal where "a motorist driving in [Hydock's] course of travel could not affect the course of travel of any motorist driving on any portion of Industrial Boulevard or Depot Street." *Id.* at 4. Finally, the trial court found that if Hydock had in fact used his right turn signal, other motorists may have been "misled into thinking he [wa]s turning right onto Depot Street after the curve onto Industrial Boulevard." *Id.* We disagree.

Section 3334 clearly requires a motorist turning his or her vehicle on a roadway to "giv[e] an appropriate signal." 75 Pa.C.S. § 3334(a). Moreover, when a vehicle is turning, the motorist must give "an appropriate signal of intention to turn right or left . . . continuously during not less than the last 100 feet traveled by the vehicle before turning." *Id.* at § 3334(b). Finally, turn signals "shall be discontinued immediately after completing the turn[.]" *Id.* at § 3334(d).

Here, the signage at the subject intersection which states "**Except Right Turn**," clearly acknowledges that Hydock was making a right turn onto Industrial Boulevard from Lincoln Avenue. Accordingly, Officer Myers had probable cause to believe Hydock had violated section 3334(b) of the Vehicle Code where no one "shall turn a vehicle . . . without giving an appropriate signal." *Id.* at § 3334(a). *See Brown*, *supra* at 1106 (where officer testified defendant turned vehicle from one street to another without using signal lamps, officer "unquestionably possessed facts to warrant belief by any

reasonable person that [defendant] violated the vehicle code.").[4]  To the extent that the trial court believes that if Hydock had used his signal other motorists may have been misled into thinking that he was turning onto eastbound Depot Street after he turned onto Industrial Boulevard, we also disagree.  As section 3334(d) states, Hydock would have been required to immediately discontinue the signal after turning onto Industrial Boulevard. The Commonwealth correctly acknowledges that this case boils down to common sense.  Considering all relevant facts[5] under a totality of the circumstances analysis, Officer Myers had probable cause where the facts and circumstances within his knowledge were "sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed."  **Hernandez**, **supra**.

Reversed.

Judge Pellegrini joins this Memorandum.

Judge Bowes files a Concurring Memorandum.

---

[4]  We also note that there is no exception to the signal requirement set forth in section 3334 for vehicles that are not required to come to a stop before turning onto another roadway.

[5] Our review of the case involved examination of Commonwealth Exhibit 1, an aerial photograph of the subject intersection, and Commonwealth Exhibits 2, CDs containing video footage of nighttime drives through the intersection from multiple directions.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/17/2020